IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVE F. SKERCE,

        Plaintiff,

        v.                                  Case No. 2:18-cv-02040-HLT

TORGESON ELECTRIC COMPANY,

        Defendant.

## MEMORANDUM AND ORDER

Plaintiff Steve F. Skerce brings this action against his former employer, Defendant Torgeson Electric Company, asserting a litany of employment-related claims under federal and state law, including: (1) interference with his right to leave and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq. (Count I); (2) failure to accommodate under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101, et seq. (Count II); (3) disability discrimination under the ADA (Count III); (4) retaliation under the ADA and Kansas Act Against Discrimination ("KAAD"), K.S.A. §§ 44-1001, et seq. (Count IV); and (5) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., and the Kansas Age Discrimination in Employment Act ("KADEA"), K.S.A. §§ 44-1111, et seq. (Count V). Doc. 37. Defendant moves for summary judgment on each claim. Doc. 38.

For the following reasons, the Court grants Defendant's request for summary judgment on Plaintiff's claims for FMLA and ADA/KAAD retaliation, ADA failure to accommodate, ADA disability discrimination (except as it pertains to Plaintiff's diabetes), and age discrimination under the ADEA and KADEA. But the Court denies Defendant's motion with respect to Plaintiff's claims for FMLA interference and ADA disability discrimination based on his diabetes.

# I. BACKGROUND[1]

## A. Plaintiff's Employment

Defendant hired Plaintiff in October 2013 as a General Journeyman Electrician ("J1"). Doc. 37 at 2. As a J1, Plaintiff's essential job duties with Defendant included assembling, installing, and running wires or other electrical components to construct functional electrical systems, inspecting electrical systems for defects and to ensure compliance with applicable codes and regulations, and performing such work from ladders, scaffolds, and roofs. Doc. 39 at 4 ¶ 12; Doc. 49 at 7 ¶ 12.

Defendant assigned Plaintiff to various "projects" during his employment. Projects are overseen by a foreman and the general superintendent. Doc. 39 at 5 ¶¶ 16-17; Doc. 49 at 8 ¶¶ 16-17. A foreman is assigned to one jobsite and is the immediate supervisor of the employees at that site. Doc. 39 at 5 ¶ 16; Doc. 49 at 8 ¶ 16. The general superintendent is above the foreman and oversees multiple jobsites, assisting the foreman at each jobsite by helping him run each site smoothly. Doc. 39 at 5 ¶ 17; Doc. 49 at 8 ¶ 17.

In 2014, Defendant assigned Plaintiff to perform general electrical work on the remodel of the Academy Sports and Orscheln stores in Topeka, Kansas. Doc. 39 at 5 ¶ 14; Doc. 49 at 7 ¶ 14. During the course of the remodel, the assigned foreman—Todd Vandervelde—reported various issues related to Plaintiff's performance to Defendant's general superintendent, Brian Mack. Vandervelde told Mack on more than one occasion that Plaintiff would not perform tasks as

---

[1] As an initial matter, the resolution of this motion was significantly complicated by the sheer volume and breadth of the facts asserted in this action, many of which were neither discussed nor analyzed in any meaningful way, and by the number of unsupported and improper objections to those facts. The vague and unsupported objections repeatedly misapply the rules regarding hearsay to attack several of the asserted facts that were properly supported by affidavits, deposition testimony, and other admissible evidence, as expressly provided by Rule 56. In many instances, one party also attempts to controvert facts with citations to nonresponsive portions of the record. The Court does not address each objection—indeed, there are many—but notes that it has carefully analyzed the summary judgment record and considers only those uncontroverted facts required to reach its decision and construes those facts in the light most favorable to Plaintiff as the nonmoving party.

instructed and that, if he wired something wrong, Plaintiff would either claim he did not do the work or that he had done what he was told. Doc. 39 at 6 ¶ 24.

Defendant later assigned Plaintiff to work on the remodel of a Dillons store in Topeka under the supervision of foreman Jose Zesati. Doc. 39 at 6 ¶ 26; Doc. 49 at 12 ¶ 26. On two or three occasions, Zesati likewise complained to Mack about Plaintiff's work performance. Doc. 39 at 6 ¶ 27. And, on September 11, 2014, Plaintiff was written up for cursing on the jobsite. Doc. 37 at 2. Plaintiff subsequently admitted to Mack that he had cursed inside the store while working. Doc. 39 at 7 ¶ 30; Doc. 49 at 13 ¶ 30.

Following this incident, Mack reassigned Plaintiff to a project at the KBI's building in Topeka. *Id.* Plaintiff began working at the KBI jobsite in mid-September 2014 under foreman Greg Franken. Doc. 39 at 7 ¶ 33; Doc. 49 at 14 ¶ 33. Shortly after his reassignment, on September 17, 2014, Defendant promoted Plaintiff to a Licensed Journeyman Electrician ("J2") position. Doc. 37 at 2; Doc. 39 at 7 ¶ 34; Doc. 49 at 14 ¶ 34. Between October 2014 and January 2015, several other employees told Franken that Plaintiff's production and the quality of his work on the KBI project were "below par" and did not meet expectations for a J2 electrician. Doc. 39 at 8 ¶ 36. Franken relayed those concerns to Mack. *Id.* at 8-9 ¶ 42.

Despite the above-detailed complaints regarding his work performance, during the course of his employment Plaintiff never received a written performance evaluation from Defendant. Doc. 37 at 2. The only discipline Plaintiff received during his employment was for cursing on the Dillons jobsite. *Id.*

### B.      Plaintiff's Health Issues

In this case, Plaintiff raises allegations regarding a number of medical conditions—including diabetes, high blood pressure, knee and back pain, and depression—for which he requested time off during his employment.

On or around July 3, 2014, while working on the Academy Sports/Orscheln remodel, Plaintiff asked the project foreman (Vandervelde) if he could leave work early because his diabetes medication, combined with the heat, was making him feel light-headed and dizzy. Doc. 39 at 17-18 ¶ 101; Doc. 49 at 41 ¶ 101. Vandervelde allowed Plaintiff to leave work early and did not require him to provide a doctor's note justifying his leave. Doc. 39 at 18 ¶ 102; Doc. 49 at 41 ¶ 102. Plaintiff left work early on at least one other occasion in the summer of 2014 due to the interaction of the heat and his diabetes medication. Doc. 39 at 18 ¶¶ 103, 105; Doc. 49 at 41-42 ¶¶ 103, 105. Again, Vandervelde allowed the early departure and did not require Plaintiff to submit any medical paperwork related to the request. Doc. 39 at 18 ¶ 106; Doc. 49 at 42 ¶ 106.

While assigned to the KBI project, Plaintiff again complained of health issues—this time, high blood pressure. Doc. 39 at 18 ¶ 107; Doc. 49 at 42 ¶ 107. The foreman of the KBI jobsite, Franken, allowed Plaintiff to leave early but told him that he would need to submit a doctor's note to return to work. *Id.* Plaintiff produced a doctor's note upon his return the next day. *Id.* On or about December 15, 2014, while still at the KBI jobsite, Plaintiff told Franken he was having issues with high blood pressure, diabetes, joint pain, and depression. Doc. 39 at 18-19 ¶ 108; Doc. 49 at 42 ¶ 108. Plaintiff further explained that the cold temperatures were affecting his knees and back, causing him difficulty climbing up and down ladders and stairs. *Id.* Franken told Plaintiff he "would have to work through it" and asked him what he wanted to do. Doc. 39 at 19 ¶ 109; Doc. 49 at 42-43 ¶ 109. Plaintiff inquired whether there were "any kind of accommodations for taking time

off" and Franken advised Plaintiff to speak with Darla Hamilton, who handled human resources for Defendant. *Id.*; Doc. 49 at 47 ¶ 133; Doc. 53 at 13 ¶ 133.

Plaintiff subsequently met with Hamilton. Plaintiff asked Hamilton whether Defendant had "disability insurance" that "covered any kind of payment" or "would pay [him] for [his] time off." Doc. 39 at 19 ¶ 110. Hamilton explained that "there was no paid time off," that there was nothing to give Plaintiff "accommodation for time off," and that if Plaintiff "took a reasonable amount of time off, that there would not be any accommodations that could ensure" his job. Doc. 39 at 19 ¶ 112; Doc. 49 at 43 ¶ 112. Hamilton asked Plaintiff how much time off he was thinking of taking, and Plaintiff replied that he did not know and would need to speak to his doctor. Doc. 39 at 19 ¶ 113; Doc. 49 at 43 ¶ 113. Plaintiff asked Hamilton about the FMLA but Hamilton told Plaintiff that Defendant did not provide that and, further, that he needed "to be careful about how much time [he] took off, because there was nothing there that would protect [his] job." Doc. 39 at 19-20 ¶¶ 114-115; Doc. 49 at 43-44 ¶¶ 114-115.

In late 2014 or early January 2015, Plaintiff took some days off work due to his diabetes, knee and back pain, and depression. Doc. 39 at 20 ¶ 117; Doc. 49 at 44 ¶ 117. Plaintiff provided a doctor's note to Franken to cover the days off and Franken accepted the note as justification. *Id.* Plaintiff did not submit a request for FMLA leave and Defendant did not designate any of Plaintiff's time off as FMLA leave. Doc. 39 at 20 ¶¶ 118-119; Doc. 49 at 44-45 ¶¶ 118-119.

### C. Plaintiff's Elbow Injury

After this time off, on January 29, 2015, Plaintiff injured his left elbow at work. Doc. 37 at 2; Doc. 39 at 9 ¶ 47; Doc. 49 at 22 ¶ 47. Plaintiff was diagnosed with a contusion and a ruptured bursa sac on his left elbow and was instructed to keep his arm in a sling. Doc. 39 at 10 ¶ 49; Doc. 49 at 22 ¶ 49. Sometime after his injury, Plaintiff met with Hamilton to discuss his elbow injury and

workers' compensation claim. Doc. 39 at 11 ¶ 56; Doc. 49 at 24 ¶ 56. Defendant maintains an FMLA policy, which provides that eligible employees may take up to 12 weeks of unpaid leave for a "serious health condition of the employee which prevents him/her from performing the essential functions of his/her job." Doc. 39 at 3 ¶ 6; Doc. 49 at 5 ¶ 6. However, although Plaintiff was eligible to take FMLA leave due to his elbow injury, Hamilton did not advise Plaintiff—either verbally or in writing—that he was eligible for FMLA leave or any other unpaid time off. Doc. 39 at 11 ¶ 58; Doc. 49 at 24 ¶ 58.

Following his injury, Plaintiff's health care provider imposed various work restrictions. Doc. 39 at 10 ¶ 50; Doc. 49 at 22 ¶ 50. Defendant accommodated those restrictions by having Plaintiff do light duty work, such as sweeping, cleaning up, and moving ladders and spools of wire, among other tasks. Doc. 39 at 10, 12 ¶¶ 54, 65; Doc. 49 at 23, 26 ¶¶ 54, 65. Defendant paid Plaintiff on days when light duty work was available. Doc. 39 at 10-11 ¶ 55; Doc. 49 at 23-24 ¶ 55. When no light duty work was available, the workers' compensation insurer paid Plaintiff's compensation. *Id.* On April 21, 2015, Plaintiff's doctor released him to return to full duty. Doc. 37 at 2.

### D. Plaintiff's Termination

After his April 21, 2015 doctor's appointment, Plaintiff left Hamilton a voice message advising her that he was cleared to return to full duty. Doc. 39 at 14 ¶ 78; Doc. 49 at 29 ¶ 78. The next day, Plaintiff was told that Defendant "would have to see what job site they were going to put [him] on, to wait and see what they had available." Doc. 39 at 14 ¶ 79; Doc. 49 at 29 ¶ 79. But on April 23, 2015—just two days after he was cleared to return—Hamilton called Plaintiff to notify him that Defendant was terminating his employment. Doc. 37 at 2; Doc. 39 at 14 ¶ 80; Doc. 49 at 29 ¶ 80. Plaintiff did not receive any prior notice that he would be terminated. Doc. 37 at 3. Defendant maintains that Plaintiff was terminated as part of a reduction in force ("RIF"),

implemented due to a work slowdown and reduced manpower needs, based on him being identified as a substandard employee. Doc. 39 at 14-15 ¶¶ 82-83.

Following his termination, on August 13, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Doc. 1-1. The EEOC issued Plaintiff a notice of right to sue letter on October 26, 2017, and Plaintiff filed this action on January 24, 2018, asserting claims for interference with his right to medical leave, failure to accommodate, disability and age discrimination, and retaliation. Doc. 1; Doc. 1-2; Doc. 37 at 12. Defendant now moves for summary judgment. Doc. 38.

## II. STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In applying this standard, courts must view the facts and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. ANALYSIS

### A. Count I (FMLA)

Count I asserts two alternate claims under the FMLA: (1) that Defendant interfered with Plaintiff's right to take FMLA leave, in violation of 29 U.S.C. § 2615(a)(1); and (2) that Defendant retaliated against Plaintiff for attempting to avail himself of that right, in violation of 29 U.S.C. § 2615(a)(2). Doc. 37 at 12. The Tenth Circuit recognizes that these two theories of recovery—the

interference theory under § 2615(a)(1) and the retaliation theory under § 2615(a)(2)—are separate and distinct. *Dalpiaz v. Carbon Cty., Utah*, 760 F.3d 1126, 1131 (10th Cir. 2014). The Court first addresses Plaintiff's interference claim.

### 1.    FMLA Interference

Section 2615(a)(1) of the FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under" the FMLA. In this lawsuit, Plaintiff argues that Defendant interfered with his right to FMLA leave by failing to advise him of his eligibility for FMLA leave. Doc. 37 at 8.

To establish an interference claim, the plaintiff must show (1) that he is entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights. *Sabourin v. Univ. of Utah*, 676 F.3d 950, 958 (10th Cir. 2012). Once a plaintiff proves his employer has interfered with his right to FMLA leave, the employer bears the burden of proving that the plaintiff would have been dismissed regardless of his request for, or taking of, FMLA leave. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1289 (10th Cir. 2007).

Defendant makes three arguments in support of its summary judgment motion. First, Defendant argues Plaintiff cannot establish a prima facie case because Plaintiff fails to show that Defendant interfered with his FMLA rights. Doc. 39 at 22. Second, Defendant argues that Plaintiff cannot survive summary judgment (even if he shows a prima facie case) because Defendant would have terminated him regardless of any exercise or attempted exercise of his FMLA rights. *Id.* at 23. Third, and finally, Defendant argues Plaintiff's interference claim is barred by the applicable statute of limitations. *Id.* at 29.

For the following reasons, the Court finds that summary judgment is not warranted on Plaintiff's FMLA interference claim. On the first issue, "[i]f [an] employer is on notice that [an] employee might qualify for FMLA benefits, the employer has a duty to notify the employee that FMLA coverage may apply." *Moss v. Bluecross, Blue Shield of Kan., Inc.*, 534 F. Supp. 2d 1190, 1200 (D. Kan. 2008); *see also Crites v. City of Haysville, Kan.*, 2018 WL 2236855, at *8 (D. Kan. 2018) (noting that "[a]n employer is subject to extensive notice requirements under the FMLA," and, "[a]mong other things, the employer must give the employee notice of FMLA leave eligibility and rights, notice of how leave is designated and treated, any requirement for providing a certificate validating a health condition, and any fitness-for-duty certification required as a condition for return to work"). "Failure to follow the notice requirements may constitute an interference with an employee's FMLA rights, if the employee is prejudiced thereby." *Crites*, 2018 WL 2236855, at *8 (citing 29 C.F.R. § 825.300(e)). Prejudice requires a plaintiff to prove "he would have acted differently had he known he was [eligible for] FMLA leave." *Lujan v. Exide Techs.*, 2012 WL 380270, at *15 (D. Kan. 2012).

The parties do not dispute that Plaintiff was eligible to take FMLA leave due to his work-related elbow injury. Doc. 39 at 11 ¶ 58; Doc. 49 at 24 ¶ 58. And it is similarly undisputed that Defendant's HR representative, Hamilton, did not advise Plaintiff, either verbally or in writing, that he was eligible for FMLA leave. *Id.* And—putting aside Defendant's bare assumption that Plaintiff was not prejudiced because "[he] would not have substituted unpaid FMLA leave in lieu of the paid coverage he received while on workers' compensation restricted duty" (Doc. 39 at 27)—based on the record before the Court, there is an issue of material fact regarding whether Plaintiff was prejudiced by Hamilton's failure to notify him of his FMLA rights.

On the second issue, the Court also finds a genuine issue of material fact regarding whether Plaintiff's dismissal would have nonetheless occurred. When an employer defends an FMLA interference claim on the ground that it would have terminated the plaintiff anyway, courts place the burden of persuasion on the employer to prove that defense.[2] *Sabourin*, 676 F.3d at 962. Although Defendant argues that Plaintiff was terminated as part of a RIF after being identified as a substandard employee who would be terminated when manpower needs reduced, given the timing of Plaintiff's termination—two days after he returned from leave for his elbow injury—the Court finds that there is a genuine dispute that Plaintiff's dismissal would have occurred regardless of the attempted exercise of his rights. Indeed, Hamilton previously advised Plaintiff that he needed "to be careful about how much time [he] took off, because there was nothing there that would protect [his] job." Doc. 39 at 19-20 ¶ 115; Doc. 49 at 44 ¶ 115.

On the third issue, the Court again finds a genuine issue of material fact regarding which statute of limitations applies. FMLA claims are generally subject to a two-year limitations period, but "willful" violations carry a three-year statute of limitations. *See* 29 U.S.C. § 2617(c)(1)-(2). "'Willful conduct' is considered to be actions which are known to violate the FMLA or are taken in reckless disregard of the FMLA." *Ramsey v. Advance Stores Co.*, 2015 WL 3948119, at *5 (D. Kan. 2015) (citing *Bass v. Potter*, 522 F.3d 1098, 1103-04 (10th Cir. 2008)). The parties do not dispute that Plaintiff's claims were filed <u>outside</u> the two-year limitations period but <u>within</u> the three-year limitations period. Thus, Defendant argues it is entitled to summary judgment on Plaintiff's FMLA claims because no reasonable jury could find that its actions were willful and thus Plaintiff's claims are time-barred under the two-year statute of limitations.

---

[2] Unlike claims for FMLA retaliation, *see infra* Part III.A.2, FMLA interference claims are not analyzed under the *McDonnell Douglas* burden-shifting scheme. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 963 (10th Cir. 2002).

But the Court finds that a genuine issue of fact exists regarding whether Defendant's alleged violations of Plaintiff's rights under the FMLA were willful, precluding summary judgment on this basis. And although the Court has concerns about Plaintiff's ultimate ability to prove willful conduct at trial, on the record before the Court, the statute-of-limitations issue is simply too fact intensive and involves too many disputes to resolve at this juncture. For all of these reasons, the Court denies Defendant's motion for summary judgment as it pertains to Plaintiff's claim for FMLA interference.

## 2. Retaliation

In addition to its prohibition on interference, the FMLA also forbids employers from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(2). Plaintiff asserts a claim for FMLA retaliation, arguing that Defendant unlawfully retaliated against him by terminating him after he took non-FMLA leave from January to April 2015. Doc. 49 at 92. Defendant argues Plaintiff's retaliation claim fails because he did not engage in any protected activity necessary to establish his prima facie case—i.e., he neither requested FMLA leave nor availed himself of any FMLA rights or benefits.[3] Doc. 39 at 27.

FMLA retaliation claims are subject to the *McDonnell Douglas* burden-shifting analysis.[4] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006); *see generally*

---

[3]  Defendant argues that summary judgment is warranted for two additional reasons: (1) even if Plaintiff could make a prima facie case, he cannot show that Defendant's articulated reasons for his termination are pretextual (Doc. 39 at 28); and (2) as with Plaintiff's claim for FMLA interference, Plaintiff's retaliation claim is time-barred (*id.* at 29). Because Defendant's first argument resolves this claim, the Court does not reach these arguments.

[4]  The Court notes that *McDonnell Douglas*'s burden-shifting scheme applies only where there is no direct evidence of retaliation. *Nealey v. Water Dist. No. 1 of Johnson Cty., Kan.*, 324 F. App'x 744, 748 (10th Cir. 2009) (where the plaintiff lacks direct evidence of retaliation, claim is properly analyzed under the *McDonnell Douglas* framework). Neither party appears to dispute the applicability of the *McDonnell Douglas* framework to Plaintiff's FMLA retaliation claim and, regardless, the Court finds that Plaintiff has not presented any direct evidence of retaliation so as to justify deviating from that framework.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first prong of the *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case. *Metzler*, 464 F.3d at 1170. To establish a claim for FMLA retaliation, the plaintiff must show (1) he engaged in a protected activity, (2) the employer took an action that a reasonable employee would have found materially adverse, and (3) there exists a causal connection between the protected activity and the adverse employment action. *Id.* at 1171.

Second, once a prima facie case has been established, the employer has the burden of producing evidence of a legitimate, non-retaliatory reason for the adverse action. *Id.* at 1170. This burden is one of production, not persuasion; it involves no credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (applying *McDonnell Douglas* framework in the context of an ADEA action). Third, provided the employer satisfies the second step, the plaintiff bears the burden of demonstrating that the employer's proffered reason is pretext for retaliatory motive. *Metzler*, 464 F.3d at 1170. In analyzing a plaintiff's claim of pretext, courts examine the facts as they appear to the individual making the termination decision; the court's role is not to "second guess" the employer's business judgment. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017); *see Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) ("[O]ur role is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."). Nor is the court's role to ask whether the decision was wise, fair, or correct. *Dewitt*, 845 F.3d at 1307. Rather, the court must determine whether the employer honestly believed the legitimate, non-retaliatory reason it gave for its conduct and acted in good faith on that belief. *Id.* Mere conjecture that the employer's explanation is pretext is not enough to justify denial of summary judgment. *Id.*

Here, the uncontroverted evidence does not show that Plaintiff engaged in any protected activity sufficient to establish a prima facie case. There is no evidence that Plaintiff ever requested FMLA leave during his employment with Defendant. Plaintiff has not produced any evidence that he asserted his FMLA rights by submitting the paperwork necessary to take such leave. Indeed, Plaintiff has presented neither originals nor copies of any FMLA paperwork, nor has he produced any records indicating he requested his doctor complete any FMLA paperwork and that any FMLA paperwork was completed and submitted to Defendant. And although the parties agree—at least for purposes of this motion—that Plaintiff <u>qualified</u> for FMLA leave due to his work-related elbow injury, and that Hamilton did not inform him of his entitlement to such leave, this is not enough. Doc. 39 at 11 ¶ 58; Doc. 49 at 24 ¶ 58. Simply qualifying for FMLA leave is insufficient to establish protected activity for purposes of an FMLA retaliation claim. *Ney v. City of Hoisington, Kan.*, 508 F. Supp. 2d 877, 887 (D. Kan. 2007). Rather, an employee "must fill out the appropriate paperwork and actually elect to take such leave." *Id.* Plaintiff did not do so. Because Plaintiff has not carried his burden of establishing a prima facie case, the Court need not proceed with the remainder of the *McDonnell Douglas* analysis. The Court accordingly finds that summary judgment is proper on Plaintiff's claim for retaliation in violation of the FMLA.

### B. Counts II-IV (ADA and KAAD)

The ADA prohibits covered employers from discriminating against "qualified individuals" with disabilities—i.e., those employees "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Counts II and III of the complaint allege Defendant violated the ADA by failing to accommodate Plaintiff's disability (Count II) and discriminating against Plaintiff on the

basis of that disability (Count III). Doc. 37 at 12. Count IV alleges a claim of retaliation against Defendant under both the ADA and its Kansas-state-law counterpart, the KAAD. *Id.*

Before the Court addresses the parties' arguments as to each of Plaintiff's claims, however, the Court first addresses an overarching threshold issue: whether Plaintiff is "disabled" within the meaning of the ADA. In this action, Plaintiff identifies a number of mental and physical impairments that he appears to allege are "qualifying disabilities" under the ADA, including high blood pressure, diabetes, depression, chronic back pain, chronic knee pain, joint pain, and a work-related elbow injury. Doc. 49 at 99.

A person is "disabled" under the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). To satisfy this definition, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities. *Holt v. Grand Lake Mental Health Ctr.*, 443 F.3d 762, 765 (10th Cir. 2006). The term "substantially limits" is to be construed broadly and the determination of whether an impairment substantially limits a major life activity requires an "individual assessment." 29 C.F.R. § 1630.2(j)(1)(i); *Vannattan v. VendTech-SGI, LLC*, 2017 WL 2021475, at *3 (D. Kan. 2017). The question of whether a plaintiff has a recognized impairment and identifies one or more major life activities are questions of law for the court, and the question of whether an impairment substantially limits a major life activity is generally a question of fact for the jury. *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011). The Court further notes that—of particular import in this case—"[t]he ADA was not designed to apply to temporary conditions." *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290 (10th Cir. 2000).

The majority of the health conditions identified by Plaintiff in this case do not qualify as disabilities under the ADA. Plaintiff's work-related elbow injury was merely a temporary condition—his doctor cleared him to return to full duty work after less than three months—and thus does not qualify as a disability under the ADA. *Id.* And, as to the majority of Plaintiff's other ailments—specifically, his alleged high blood pressure, depression, chronic back pain, chronic knee pain, and joint pain—there is no record evidence indicating that those were anything but temporary conditions or that they otherwise constitute physical or mental impairments that substantially limit one or more major life activities.

But the Court finds there is a genuine issue of fact regarding whether Plaintiff's diabetes qualifies as a disability under the ADA. Plaintiff's diabetes qualifies as a "physical or mental impairment" within the meaning of the ADA. *See Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009) (in ADA disability discrimination case involving diabetic plaintiff, holding that the plaintiff's diabetes qualified as a "physical or mental impairment" because the condition affected the plaintiff's digestive, hemic, and endocrine systems); 29 C.F.R. § 1630.2(h)(1) (a "physical or mental impairment" includes "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as . . . digestive . . . hemic . . . and endocrine"). Plaintiff identifies at least one major life activity affected by his diabetes—due to the interaction of the heat and his diabetes medication, Plaintiff complained of feeling light-headed and dizzy, which caused him trouble working. *See* 29 C.F.R. § 1630.2(i)(1)(i) (defining "major life activities" as including activities such as "performing manual tasks," "standing," "breathing," and "working"). And broadly construing the term "substantially limits," the Court finds there is a question of fact regarding whether Plaintiff's diabetes substantially limits a major life activity.

In sum, the Court finds that the majority of the ailments identified by Plaintiff are not ADA-qualifying disabilities, with the exception of his diabetes. The Court therefore addresses each of Plaintiff's ADA claims only within the context of his diabetes.

### 1. Failure to Accommodate

The ADA provides a cause of action for disabled employees whose employers fail to reasonably accommodate them. 42 U.S.C. § 12112(b)(5)(A). Failure to accommodate claims are not analyzed under the *McDonnell Douglas* framework; rather, the Tenth Circuit has developed a modified burden-shifting framework under which courts are to assess such claims. *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017).

Under this modified framework, the plaintiff must first establish a prima facie case: (1) that he is disabled under the ADA, (2) that he is "otherwise qualified," and (3) that he requested a "plausibly reasonable accommodation." *Id.* Once the plaintiff makes this showing, the burden shifts to the employer to present evidence either rebutting one or more elements of the prima facie case or establishing an affirmative defense. *Id.* If the employer does either of these things, summary judgment is appropriate unless the plaintiff can produce evidence establishing a genuine dispute regarding the affirmative defenses or rehabilitates any of the challenged elements of his prima facie case. *Id.*

With respect to his claim for failure to accommodate, Plaintiff acknowledges that "[f]or the most part, [Defendant] accommodated Plaintiff's qualifying disabilities." Doc. 49 at 104. Plaintiff further acknowledges that "[w]hen [Defendant] was made aware that Plaintiff needed reasonable accommodations, [Defendant] permitted Plaintiff to take time off." *Id.* Nonetheless Plaintiff maintains Defendant violated the ADA "when it chose not to return Plaintiff to work when released by his medical provider." *Id.* Plaintiff states that "[a] reasonable accommodation

means nothing if an employee is terminated for exercising [that] accommodation." *Id.* This appears to be the crux of Plaintiff's failure to accommodate claim: that Defendant failed to accommodate his alleged disabilities when it terminated him after he returned from leave for his elbow injury. Defendant contends it is entitled to summary judgment on this claim because Plaintiff did not request any plausibly reasonable accommodation for any alleged disability, and, further, even if he did, Defendant accommodated those requests.[5] Doc. 39 at 34.

The Court agrees with Defendant. The record establishes two occasions upon which it could be construed that Plaintiff requested accommodation related to his diabetes: (1) his meeting with Hamilton during which he inquired about potential accommodations for his health issues, and (2) when he requested that he be permitted to leave work early due to complications arising from his diabetes medication. The Court first addresses Plaintiff's meeting with Hamilton and finds that Plaintiff's inquiries during that meeting did not constitute a request for a plausibly reasonable accommodation. First, during the meeting, Plaintiff asked Hamilton whether Defendant had "disability insurance" that "covered any kind of payment" or "would pay [him] for [his] time off"—in other words, Plaintiff inquired about the availability of paid leave. Doc. 39 at 19 ¶ 110. However, the EEOC's guidance suggests that a request for paid leave not otherwise offered by the employer is not considered a plausibly reasonable accommodation under the ADA. *See* EEOC Enforcement Guidance, 2002 WL 31994335, at *14 (stating that "[p]ermitting the use of accrued paid leave . . . is a form of reasonable accommodation when necessitated by an employee's disability" but "[a]n employer does not have to provide paid leave beyond that which is provided to similarly-situated employees").

---

[5]    Defendant also argues Plaintiff has not shown he suffers from an ADA-qualifying disability. Doc. 39 at 31. Having already addressed that argument above, however, the Court does not address it again here.

Second, during the meeting, Hamilton inquired about the duration of Plaintiff's potential leave and Plaintiff replied that he did not know and would need to speak to his doctor. Doc. 39 at 19 ¶ 113; Doc. 49 at 43 ¶ 113. But "[w]ithout an expected duration of an impairment, an employer cannot determine whether an employee will be able to perform the essential functions of the job in the near future and therefore whether the leave request is a 'reasonable' accommodation." *Cisneros v. Wilson*, 226 F.3d 1113, 1130 (10th Cir. 2000), *overruled on other grounds by Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001); *see also Punt*, 862 F.3d at 1051 (finding plaintiff did not request a reasonable accommodation where plaintiff did not inform her employer of the expected duration of her impairment and "she was very vague about how much time she . . . was going to miss" as well).

Plaintiff's requests that he be permitted to leave work early on occasion due to complications arising from his diabetes likewise fail to establish a request for reasonable accommodation. Again, such vague, non-specific requests do not qualify as requests for plausibly reasonable accommodation. *See Punt*, 862 F.3d at 1051. And, regardless, Defendant accommodated those requests. The uncontroverted evidence shows that, on multiple occasions between mid-2014 and early 2015, Plaintiff requested—and was granted—time off due to complications related to his diabetes. Doc. 39 at 17-18, 20 ¶¶ 101-103, 105-106, 117; Doc. 49 at 41-42, 44 ¶¶ 101-103, 105-106, 117. For these reasons, summary judgment is warranted on Plaintiff's claim for failure to accommodate.

### 2. Disability Discrimination

Plaintiff next claims Defendant unlawfully discriminated against him on the basis of disability. The ADA prohibits covered employers from discriminating against "a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a).

ADA discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting scheme. *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 896 (10th Cir. 2017).

Again, under *McDonnell Douglas*'s three-part analysis, a plaintiff must first establish his prima facie case. To establish a prima facie case of ADA disability discrimination, the plaintiff must show: (1) he is a disabled (or perceived as disabled) person as defined by the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) he suffered discrimination as a result of his disability. *Id.* The plaintiff endures "discrimination" within the meaning of the third prong where he suffers an adverse employment action because of his disability. *Id.* If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.* If the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reasons for its actions are mere pretext for discrimination. *Id.*

As set forth above, the Court finds that Plaintiff can meet the first element of his prima facie case (that he is a disabled person under the ADA) with respect to his diabetes. And, at least for purposes of summary judgment, Defendant concedes that Plaintiff was qualified to perform the essential functions of his position, establishing the second element. Doc. 39 at 31. The Court therefore proceeds to the third element of Plaintiff's prima facie case: whether he suffered discrimination as a result of his disability.

In its motion for summary judgment, Defendant argues Plaintiff cannot show it discriminated against him on the basis of any disability. *Id.* at 33. The Court disagrees. The evidence shows that Plaintiff notified his supervisors multiple times from mid-2014 to early 2015 that he was experiencing difficulties stemming from his diabetes medication. Doc. 39 at 17-19 ¶¶ 101-103, 105-106, 108; Doc. 49 at 41-42 ¶¶ 101-103, 105-106, 108. Plaintiff took time off on

several occasions due to these complications. *Id.* When Plaintiff met with Hamilton to discuss potential accommodations, Hamilton told him that if he "took a reasonable amount of time off, that there would not be any accommodations that could ensure" his job, and, further, that he needed "to be careful about how much time [he] took off, because there was nothing there that would protect [his] job." Doc. 39 at 19-20 ¶¶ 112, 115; Doc. 49 at 43-44 ¶¶ 112, 115. Several months later, and just two days after returning from leave for an unrelated injury, Plaintiff was terminated. Doc. 37 at 2; Doc. 39 at 14 ¶ 80; Doc. 49 at 29 ¶ 80. The Court finds there is enough in the record to establish a genuine issue of material fact regarding whether Plaintiff suffered discrimination as a result of his diabetes.

The Court therefore turns to Defendant's next argument in favor of summary judgment—that, even if Plaintiff could make a prima facie case, he cannot show that Defendant's reasons for his termination were mere pretext for discrimination. Defendant maintains Plaintiff was terminated as part of a RIF, implemented due to a work slowdown and reduced manpower needs, based on Plaintiff being identified as a substandard employee. Doc. 39 at 14-15 ¶¶ 82-83. The uncontroverted evidence shows that, during his employment, multiple employees reported concerns related to Plaintiff's attitude and work performance. *Id.* at 6 ¶¶ 24, 27. During his work on the KBI project, several employees reported that Plaintiff's production and the quality of his work were "below par" and did not meet expectations for his position. *Id.* at 8 ¶ 36.

However, the Court finds a genuine issue of material fact exists regarding whether Defendant's reasons for terminating Plaintiff were pretext for discriminatory intent. First, Plaintiff was terminated just two days after he returned from his non-FMLA leave. On April 21, 2015, Plaintiff notified Defendant that he was cleared to return to full duty work. Doc. 39 at 14 ¶ 78; Doc. 49 at 29 ¶ 78. The next day, Plaintiff was told Defendant "would have to see what job site

they were going to put [Plaintiff] on, to wait and see what they had available." Doc. 39 at 14 ¶ 79; Doc. 49 at 29 ¶ 79. But on April 23, 2015, Plaintiff was notified that Defendant was terminating his employment. Doc. 37 at 2; Doc. 39 at 14 ¶ 80; Doc. 49 at 29 ¶ 80.

Although temporal proximity alone is not sufficient to defeat summary judgment, temporal proximity <u>plus</u> circumstantial evidence can be sufficient to establish pretext. *See Pinkerton v. Colo. Dept. of Transp.*, 563 F.3d 1052, 1066 (10th Cir. 2009); *Peterson v. Exide Techs.*, 2011 WL 677150, at *8 (D. Kan. 2011). The Court finds enough circumstantial evidence here to create a fact issue for trial. When Plaintiff met with Hamilton to discuss potential accommodations for his health issues (including his diabetes), Hamilton advised Plaintiff that if he "took a reasonable amount of time off, that there would not be any accommodations that could ensure" his job and that Defendant needed "to be careful about how much time [he] took off, because there was nothing there that would protect [his] job." Doc. 39 at 19-20 ¶¶ 112, 115; Doc. 49 at 43-44 ¶¶ 112, 115. The Court also notes that, despite the complaints regarding his work performance, Plaintiff never received a written performance evaluation during his employment with Defendant, and, in fact, the only discipline Plaintiff received was for cursing on the Dillons jobsite in September 2014, seven months prior to his termination. Doc. 37 at 2.

For these reasons, the Court finds Defendant has not established that it is entitled to summary judgment on this claim. The Court therefore denies Defendant's request for summary judgment on Plaintiff's ADA discrimination claim as it pertains to his diabetes.

### 3.    Retaliation

Plaintiff also argues Defendant unlawfully retaliated against him in violation of both the ADA and its Kansas counterpart, the KAAD. Doc. 49 at 104-106. In response, Defendant argues Plaintiff cannot establish a prima facie case of retaliation because he fails to show that he engaged

in any protected activity or that any purported protected activity was the cause of his termination. Doc. 39 at 36-37. And, even if Plaintiff can establish a prima facie case, Defendant contends it is still entitled to summary judgment because Plaintiff cannot show that its asserted reason for his termination was mere pretext. *Id.* at 38.

The ADA and the KAAD prohibit employers from discharging an employee who opposes any of the acts of discrimination prohibited by the statute. *See* 42 U.S.C. § 12203(a); K.S.A. § 44-1009(a)(4); *see also Land v. Midwest Office Tech., Inc.*, 114 F. Supp. 2d 1121, 1140 (D. Kan. 2000). To establish a prima facie case of retaliation under either the ADA or the KAAD, a plaintiff must show: (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action during or after his protected activity, which a reasonable employee would have found materially adverse; and (3) there was a causal connection between the protected activity and the adverse action. *Nyanjom v. Hawker Beechcraft Corp.*, 641 F. App'x 795, 799 (10th Cir. 2016) (analyzing retaliation claims under the ADA and the KAAD together). Plaintiff's claim for retaliation is subject to the *McDonnell Douglas* burden-shifting framework.[6] *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (applying *McDonnell Douglas* burden-shifting approach to ADA retaliation claim); *Redmond v. Mirror, Inc.*, 2017 WL 3873730, at *11 (D. Kan. 2017) (analyzing KAAD retaliation claim using *McDonnell Douglas* framework). Therefore, the Court first considers whether Plaintiff has established his prima facie case.

The Court finds that Plaintiff is unable to establish his prima facie case and, therefore, summary judgment is appropriate. First, the Court agrees with Defendant's argument that Plaintiff does not clearly identify any protected activity in which he engaged. In his opposition, Plaintiff

---

[6] The parties do not appear to dispute the applicability of the *McDonnell Douglas* framework to Plaintiff's ADA retaliation claim.

appears to argue that he engaged in protected activity when he purportedly requested reasonable accommodations for his alleged disabilities. Doc. 49 at 104-106. However, this is far from clear. In the absence of any allegations of protected activity, Plaintiff's retaliation claim necessarily fails. *See Coleman v. Blue Cross Blue Shield of Kan.*, 487 F. Supp. 2d 1225, 1253 (D. Kan. 2007) (plaintiff was "unable to assert a claim of retaliation under the ADA" in part because she failed to identify in the pretrial order or her response brief "the protected activity she was engaged in that prompted the alleged retaliation").

Second, to the extent Plaintiff attempts to premise his retaliation claim on any request for reasonable accommodation, as established above, Plaintiff did not request any reasonable accommodation with respect to his diabetes. Therefore, this <u>cannot</u> serve as the protected activity necessary to sustain his claim. In the absence of any protected activity, Plaintiff cannot establish his prima facie case of retaliation. Because Plaintiff has not carried this initial burden, the Court need not proceed with the remainder of the *McDonnell Douglas* analysis. The Court finds that summary judgment is proper on Plaintiff's claim for retaliation under the ADA and the KAAD.

### C. Count V (ADEA and KADEA)

Finally, Count V alleges Defendant discriminated against Plaintiff on the basis of his age (54) in violation of the ADEA and its state-law counterpart, the KADEA. Doc. 37 at 12. Both the ADEA and the KADEA prohibit discrimination on the basis of age in employment decisions; protection extends to individuals age 40 and older. *See* 29 U.S.C. §§ 623(a)(1), 631(a); K.S.A. §§ 44-1112(a), 44-1113(a)(1). The analysis for claims of age discrimination is the same under both statutes. *Linnebur v. United Tel. Ass'n*, 2013 WL 3815865, at *3 (D. Kan. 2013). In the absence of any direct evidence of discrimination, the Court again turns to the *McDonnell Douglas*

framework.[7] *Montoya v. Jacobs Tech. Inc.*, 764 F. App'x 830, 833-34 (10th Cir. 2019) (applying *McDonnell Douglas* in the ADEA context); *Strauthers v. Kellogg Sales Co.*, 2018 WL 623606, at *6 (D. Kan. 2018) (applying *McDonnell Douglas* framework to claims under the KADEA).

Again, the first step under *McDonell Douglas* is to determine whether Plaintiff has established his prima facie case. *See Montoya*, 764 F. App'x at 834. In this case, Defendant contends Plaintiff was terminated as part of a RIF. The Tenth Circuit has held that, to establish a prima facie case of age discrimination in the context of a RIF, the plaintiff must show: (1) that he was within the protected age group when he was discharged; (2) that he was doing satisfactory work; (3) that he was discharged; and (4) the presence of some evidence that the employer intended to discriminate against him in reaching its RIF decision.[8] *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998). Here, Defendant concedes Plaintiff can meet the first and third elements of his prima facie case (that Plaintiff was in the protected age group at the time of his discharge and that he was, in fact, discharged). Doc. 39 at 38. But Defendant argues Plaintiff cannot satisfy the remaining elements of his prima facie case. *Id.*

The Court finds, however, that Plaintiff can establish his prima facie case. Indeed, the burden at this stage is not onerous, and only a minimal showing is necessary. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (1999). Given this light burden, the Court finds that Plaintiff can establish he was doing satisfactory work

---

[7]   As with Plaintiff's other claims, the parties do not appear to dispute the applicability of the *McDonnell Douglas* framework to Plaintiff's age discrimination claim.

[8]   The Court notes that the fourth element of a plaintiff's prima facie case for age discrimination is modified in the RIF context. At points in their briefing, both Plaintiff and Defendant identify the fourth element as requiring that a plaintiff show that "a younger person replaced him or he received less favorable treatment than younger employees." Doc. 39 at 38; Doc. 49 at 106. But because "[i]n [RIF] cases, plaintiffs are simply laid off and thus incapable of proving actual replacement by a younger employee . . . courts have modified the fourth prima facie element by requiring the plaintiff to 'produc[e] evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir. 1988). Therefore, the briefing on this issue—whether Plaintiff was in fact replaced by a younger employee—is not discussed in significant detail.

so as to satisfy the second element of his case. Despite the complaints regarding his performance, Plaintiff never received a written performance evaluation and the only discipline Plaintiff received was for cursing on the Dillons jobsite seven months prior to his termination. Doc. 37 at 2. The Court likewise finds Plaintiff can meet the fourth element of his case. This fourth element "may be established through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the [RIF]." *Beaird*, 145 F.3d at 1165 (internal quotations omitted). Thus, "[e]vidence that an employer fired qualified older employees <u>but retained younger ones in similar positions</u> is sufficient to create a rebuttable presumption of discriminatory intent and to require the employer to articulate reasons for its decision." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir. 1988) (emphasis added). In his opposition, Plaintiff points to fifteen employees who, at the time he was terminated, were working in Kansas, under the age of 40, and retained. Doc. 49 at 107-108. Although, as established by Defendant in its reply, many of the employees were not journeyman electricians, Defendant concedes the other identified employees were electricians. Doc. 53 at 38-39. Because there is evidence that Defendant, despite terminating Plaintiff, nonetheless retained younger employees in similar positions, Plaintiff can meet the fourth element. *See Beaird*, 145 F.3d at 1167 ("[A] plaintiff who is fired pursuant to a RIF and who held a similar position to a younger retained employee can satisfy the fourth element.").

But, although Plaintiff can satisfy the light burden at the prima facie stage, turning to the remainder of the *McDonnell Douglas* analysis, the Court finds that—on the record before the Court—no reasonable jury could conclude that Defendant's articulated reason for Plaintiff's termination (the RIF) was pretext for age discrimination.[9] In his opposition, Plaintiff points to

---

[9] The Court notes that it previously held—in connection with Plaintiff's ADA disability discrimination claim— that there was a genuine issue of material fact regarding whether the purported RIF was merely pretext for discrimination on the basis of Plaintiff's diabetes. *See supra* Part III.B.2. However, there are several distinguishing factors between that holding and the Court's holding here. First, Defendant fired Plaintiff a mere two days after

circumstantial evidence regarding the employees hired by Defendant before and after his termination. Doc. 49 at 106-108. But, as discussed above, many of the fifteen employees identified by Plaintiff were not electricians. Doc. 53 at 26-28 ¶ 128. And many of the identified employees did not even log any hours at the KBI project (Plaintiff's assigned project prior to his termination). *Id.* To make a comparison demonstrating discrimination, a plaintiff must show that the employees were "similarly situated"—"that is, reporting to the same supervisor, held to the same standards, and afoul of those standards to at least the same degree." *Roberts v. Int'l Bus. Machs. Corp.*, 733 F.3d 1306, 1310 (10th Cir. 2013). Here, Plaintiff fails to present any credible evidence on the issue of pretext with respect to his age discrimination claim, and mere conjecture that Defendant's explanation is pretext is not enough to justify denial of summary judgment. Therefore, the Court finds summary judgment is proper on Plaintiff's claim for age discrimination.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 38) is GRANTED IN PART and DENIED IN PART as set forth in Part III, *supra*.

IT IS SO ORDERED.

Dated: August 13, 2019                             /s/  *Holly L. Teeter*
                                                                    HOLLY L. TEETER
                                                                    UNITED STATES DISTRICT JUDGE

---

he returned from non-FMLA leave related to an injury. Second, with respect to Plaintiff's disability discrimination claim, there is circumstantial evidence in the form of comments made by Defendant's HR representative, Hamilton, regarding potential ramifications if Plaintiff were to take too much time off for his health issues. With respect to his age discrimination claim, however, Plaintiff has not come forward with any credible evidence suggesting that Defendant's stated reason for his termination was mere pretext for discrimination based on his age.